ERVIN, Chief Judge.
This is an appeal and cross-appeal from a final order which refused to permit appellant, employer, to credit wage-loss payments against payment of permanent total disability (PTD) in the same amount, found that employer acted in bad faith in not timely accepting appellee, claimant, as per *741 manently and totally disabled, and, based on that finding, awarded attorney’s fees. We reverse the order as it relates to the issues raised in the appeal, thereby mooting discussion of the issues raised in the cross-appeal.
Claimant, in the course of his employment as a butcher, suffered a compensable lower back injury on October 7, 1979, while lifting beef. The employer paid temporary total disability (TTD) benefits from October 8, 1979 to May 26, 1980, at a rate of $185.03 per week, and wage-loss benefits from May 27, 1980 to June 29, 1982, at a rate of $795.62 per month. After back surgery, claimant reached maximum medical improvement (MMI) on June 16, 1981, with a 25% permanent impairment rating. On July 20, 1981, claimant filed a claim for PTD benefits since MMI.
In May 1982, after unsuccessful efforts to rehabilitate claimant, his rehabilitation advisor sent a written report on claimant’s status to employer’s servicing agent. The servicing agent’s claims manager in charge of claimant’s file received the rehabilitation report on May 12, 1982. The claims manager did not read the report until at least two weeks later, and then placed surveillance on claimant because he questioned the sincerity of claimant’s search for a new job. After the surveillance showed no problems with claimant’s search, the claims manager took two additional weeks to review claimant’s file and confer with the employer and its attorney about claimant.
On June 29, 1982, the employer accepted claimant as permanently and totally disabled, setting the effective date of the acceptance as April 7, 1982, the last date that claimant was actively involved in rehabilitation efforts. Employer, therefore, reclassified wage-loss payments to claimant from April 7, 1982 to June 29, 1982 as PTD payments. Claimant contested that reclassification and asserted that the employer should have accepted claimant as permanently and totally disabled as of the date of MMI, June 16,1981, and contended that the employer acted in bad faith in not doing so.
After several hearings, the deputy commissioner found: (1) Employer had a reasonable basis for paying wage-loss benefits from MMI to May 11, 1982; (2) although claimant is due PTD benefits from June 17, 1981, employer is entitled to a credit for wage-loss benefits paid through May 11, 1982; (3) the delay in reading the rehabilitation report constituted negligent handling amounting to bad faith; (4) from May 12, 1982 to June 29, 1982, no reasonable basis existed for mispayment; therefore reclassification for that period is not allowed under Belam Florida Corporation v. Dardy, 397 So.2d 756 (Fla. 1st DCA 1981); (5) that mispayment amounts to bad faith; (6) employer’s bad faith goes directly to the issue of employer’s acceptance of claimant as permanently and totally disabled; and (7) a reasonable fee for claimant’s attorney with respect to employer’s bad faith is $20,000. The deputy ordered employer to pay claimant PTD benefits for the period from May 12, 1982 through June 29, 1982, deeming the wage-loss benefits already paid for that period to be “a gratuity in accordance with the rule in Belam.”
In Belam, there was an overpayment of compensation, and this court adopted the presumption that “any overpayment of compensation is a gratuity in the absence of a finding that a reasonable basis exists for the overpayment.” 397 So.2d at 758 (emphasis in original). In the case at bar, there was no overpayment from May 12 through June 29, 1982; employer simply used a classification — wage-loss — different from the classification later determined to be proper, PTD. The amount of each payment, $185.03 per week, was proper under either classification,[1] and regardless of the classification, claimant will receive PTD benefits for the rest of his life. Under these circumstances, the deputy erred when he applied the Belam rea *742 sonable basis test. Since the incorrect classification caused no economic detriment to claimant, employer should have been permitted to credit wage-loss benefits against payment of PTD benefits in the same amount during the period of May 12 through June 29, 1982. Otherwise, claimant will receive double benefits for that period.
We also disagree with the deputy’s finding that the employer acted in bad faith in accepting claimant as permanently and totally disabled on June 29, 1982, rather than May 12, 1982. Section 440.34(2)(b), Florida Statutes (1979), requires a deputy to find both bad faith in handling an injured worker’s claim, and that the injured worker suffered “economic loss.” Claimant asserts that he suffered two instances of economic loss: $1,300 in PTD benefits withheld by employer for the period of May 12 through June 29, 1982; and litigation costs of over $1,000. Regarding the former, the fact that claimant received wage-loss benefits limited in duration when he should have been receiving permanent disability not so limited does not constitute an economic loss when the amount of each payment was the same. Winter Garden Citrus v. Parrish, 438 So.2d 472, 473 (Fla. 1st DCA 1983). There we stated that “claimant’s obligation to pay for the services of her attorney was not a present economic loss but merely an obligation contingent on the employer/carrier’s liability for claimant’s attorney's fees under Section 440.34(2)(b) [1979].” Id. at 474. While the litigation costs paid by claimant in the case at bar arguably constitute a present economic loss, Parrish prevents such a conclusion. In the absence of an economic loss to claimant, the deputy erred in ordering the award of attorney’s fees pursuant to section 440.34(2)(b) (1979), regardless of whether employer acted in bad faith.
REVERSED.
BOOTH and THOMPSON, JJ„ concur.

. Claimant's average weekly wage was $277.40. See Sections 440.15(l)(a) and (3)(b)(l), and 440.14(2), Florida Statutes.